IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NCI GROUP, INC., d/b/a METAL
COATERS OF GEORGIA and d/b/a
METAL COATERS OF MISSISSIPPI,

    Plaintiff,

    v.

CANNON SERVICES, INC., d/b/a
SEQUOYAH METAL SYSTEMS;
GARY M. GOFF; LORRI M. COKER;
GOLDIN INDUSTRIES, INC.; JACK
GOLDIN; MARTIN C. GOLDIN;
LONNIE A. CARROLL; STEVEN R.
BYERS; DARRELL L. COOTS; AND
RANDY W. FROEHLICH,

    Defendants.

CIVIL ACTION FILE

NO. 1:09-CV-0441-BBM

# O R D E R

This matter is before the court on the Motion to Dismiss [Doc. No. 48], filed

by Defendants Goldin Industries, Inc., Jack Goldin, and Martin C. Goldin

(collectively "the Goldin Defendants"); the Second Motion for a More Definite

Statement [Doc. No. 51] filed by Defendant Steven R. Byers ("Mr. Byers"); the

Motion to Dismiss Defendant Lonnie Carroll's Counterclaim for Cost of Defense

[Doc. No. 56] filed by Plaintiff NCI Group, Inc., d/b/a Metal Coaters of Georgia

("MCG") and d/b/a Metal Coaters of Mississippi ("MCM") (collectively "NCI");

the Motion to Dismiss Defendant Darrell L. Coots's Counterclaim for Cost of

Defense [Doc. No. 64] filed by NCI; the Motion for Leave to Amend Complaint and to Add Parties [Doc. No. 77] filed by NCI; the Motion for Stay of Further Proceedings as to Him Until Further Order of the Court [Doc. No. 83] filed by Mr. Byers; the Motion for Stay of Further Proceedings as to Him Until Further Order of the Court [Doc. No. 90] filed by Lonnie Carroll ("Mr. Carroll"); the Motion to Stay Discovery for Ninety Days for All Parties [Doc. No. 97] filed by NCI; the Motion to Dismiss NCI Group, Inc.'s Amended Complaint [Doc. No. 99] filed by the Goldin Defendants; the Motion for Leave to File Briefing Exceeding Court's Page Limitation [Doc. No. 101] filed by the Goldin Defendants; the Motion to Strike a Portion of NCI's Reply and Bar NCI From Referring to Certain Immaterial Matters [Doc. No. 109] filed by the Goldin Defendants; and the Motion for Leave to File Brief Exceeding Court's Page Limitation [Doc. No. 112] filed by NCI.

## I.     Factual and Procedural Background

On a motion to dismiss, the court accepts as true all factual allegations set out in the plaintiff's complaint.  See Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  The following overview of the facts is derived from the Amended Complaint,[1] and does not constitute findings of fact by the court.

---

[1]This Order grants NCI's Motion for Leave to Amend Complaint and to Add Parties, and therefore relies upon the Amended Complaint for its recitation of the facts.

NCI is a business that manufactures metal buildings, metal components, and metal coil coatings. Both MCG and MCM are divisions of NCI that process large steel coils for other NCI companies and outside customers, by "painting, slitting or otherwise treating and coating steel coils." (Am. Compl. ¶ 16.) Once a coil has been coated, it is subject to both visual and computer inspections. The coil is then wrapped in plastic packing and labeled with the Metal Coaters' trademark, which indicates that it is prime material. In the course of processing steel coils, inevitably some portions of the coils become damaged or receive defective coating. However, MCG's and MCM's clients normally have an agreed upon allowance for damaged or defective processing (usually between two to five percent of the total coils). These damaged and defective coils are generally sold as "secondary," and the buyer is reimbursed at a pre-determined rate. (Id. ¶ 19.)

On February 19, 2006, an MCG employee filed a report with NCI's Ethics Point Reporting System website, alleging that current and former employees of MCG had been "improperly and intentionally selling prime steel as secondary at deeply discounted rates to certain customers." (Id. ¶ 21.) In the course of investigating this allegation, NCI discovered that Defendants Cannon Services, Inc., d/b/a Sequoyah Metal Systems ("Cannon Services"); Gary M. Goff; Lorri M. Coker ("Ms. Coker"); the Goldin Defendants; Mr. Carroll; Mr. Byers; Darrell L. Coots ("Mr.

Coots"); Randy W. Froehlich; Alan Goldin ("A. Goldin"); Steven Goldin ("S. Goldin"); and Goldin Metals, Inc. (collectively "Defendants") were operating several related schemes to defraud NCI and its clients.

The first scheme occurred at MCG when NCI employees "intentionally changed the designation of prime-painted coils . . . from prime to secondary," or rejected the coils without justification. The employees would subsequently change the designation of the coils in NCI's computerized inventory system from prime to secondary, and sell the coils to Cannon Services "at prices comm[en]s[u]rate with secondary materials." (Id. ¶ 26.) Cannon Services would in turn pay kickbacks to the NCI employees for having downgraded the prime coils (collectively "Downgraded Prime Scheme").

The second scheme also occurred at MCG. The NCI employees would take prime coil that was designated as: (1) RAW, which had never been coated or loaded into the coating line; (2) RAC, which had been placed onto the coating line, partially coated, and removed for coating at a later time; or (3) RRS, which was the uncoated remainder of a master coil after an order was completed—and downgrade these coils "from finished goods to secondary in NCI's computerized inventory system." (Id. ¶ 33.) The NCI employees would then instruct subordinate employees to paint the RAW, RAC, or RRS coils without the required computerized work order.

Subsequently, the NCI employees would package the RAW, RAC, or RRS coils with the Metal Coaters' trademark, and sell the coils to Cannon Services "at prices comm[en]s[u]rate with secondary materials." (Id. ¶ 35.) Cannon Services would in turn pay kickbacks to the NCI employees for their participation (collectively "RAW/RACS/RRS Scheme").

The third scheme occurred at MCM, when Mr. Carroll would instruct subordinate employees "to accept secondary-quality metal coil from Goldin Metals" ("Goldin Coils"), cause these Coils to be coated, and then charge Goldin Metals less than the market-value of the coating or NCI's coating costs without NCI's knowledge or permission. (Id. ¶ 42.) Although it was much more time intensive and costly for NCI to coat the Goldin Coils because they were not of prime quality, Goldin Metals paid less than other customers paid to have their prime-quality metal coils coated. Coating the Goldin Coils "would often conceal" the Coils' defects, and after being coated the Coils were wrapped in packaging bearing the Metal Coaters' trademark, indicating that they were prime material, when in fact they were not. (Id. ¶¶ 44-45.) The Goldin Coils would then be shipped per Goldin Metals' instructions, and Goldin Metals would pay kickbacks to Mr. Carroll (collectively "Goldin Secondary Scheme").

The fourth and last scheme occurred at MCM when Mr. Carroll sold secondary-quality metal coil to Cannon Services at prices below market values without NCI's knowledge or permission. Mr. Carroll agreed to sell, and Cannon Services requested and agreed to purchase, secondary-quality metal coil "for a handling charge rather than actual-market value." (Id. ¶ 53.) Cannon Services would in turn pay kickbacks to Mr. Carroll for his having sold the coils at these improperly discounted prices (collectively "Cannon Mississippi Scheme").

NCI alleges that the Downgraded Prime Scheme, the RAW/RAC/RRS Scheme, the Goldin Secondary Scheme, and the Cannon Mississippi Scheme (collectively "NCI-Targeted Scheme") "were operated continually from approximately 1995 until 2006." (Id. ¶ 59.) On February 19, 2009, NCI filed suit against Defendants, and filed an Amended Complaint on May 1, 2009. NCI alleges the following counts: (1) fraud; (2) conversion; (3) breach of fiduciary duty; (4) aiding and abetting breach of fiduciary duty; (5) tortious interference with contractual or business relations; (6) negligence; (7) violations of the Federal Civil Racketeer Influenced and Corrupt Organizations Act ("federal RICO"), 18 U.S.C. § 1961, et seq.; and (8) violations of the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO"), O.C.G.A. § 16-14-1 et seq. As relief, NCI requests: (1) injunctive relief pursuant to O.C.G.A. § 16-14-6; (2) money damages

not less than $3,000,000; (3) attorneys' fees and expenses; (4) punitive damages not less than $6,000,000; (5) treble damages; and any further relief that is just, proper, and equitable.

## II.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss when a complaint fails to state a claim upon which relief can be granted. To withstand a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). The court must determine whether the plaintiff "has alleged enough facts to suggest, raise a reasonable expectation of, and render plausible" the claims. <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1296 (11th Cir. 2007). The court construes the complaint in the plaintiff's favor, and accepts the facts it alleges as true. <u>M.T.V. v. DeKalb County Sch. Dist.</u>, 446 F.3d 1153, 1156 (11th Cir. 2006). However, "a formulaic recitation of the elements of a cause of action will not do," <u>Twombly</u>, 550 U.S. at 555, as "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). Thus, a wholly conclusory statement of a claim cannot, without more, survive a

motion to dismiss.  See Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 500 F.3d 1293,

1303 (11th Cir. 2007) (citation omitted).

## III.  Analysis

The court will first address NCI's request for leave to file an Amended

Complaint.  It will then discuss the Goldin Defendants' arguments that the counts

alleged against them in the Amended Complaint should be dismissed for failure to

state a claim.  This is followed by an analysis of Mr. Byers's Motions to Dismiss the

Counterclaims of Messrs. Carroll and Coots.  Then Mr. Byers's Second Motion for

a More Definite Statement, the Goldin Defendants' Motion to Strike, and the various

Motions to Stay Discovery and Further Proceedings will be addressed.

### A.    Motion for Leave to Amend Complaint

NCI's Motion for Leave to Amend Complaint and to Add Parties states that

since the filing of its Complaint on February 19, 2009, the company "has continued

to conduct a diligent investigation . . . of the facts and occurrences giving rise to the

Complaint."  (Pl.'s Mem. of Law in Supp. of Mot. for Leave to Amend Compl.  and

to Add Parties 2.)  NCI says that during its investigation it subsequently uncovered

three additional schemes ("New Schemes") that the Defendants allegedly used to

defraud NCI, and likewise found three new individuals and/or entities—A. Goldin,

S. Goldin, and Goldin Metals (collectively "New Defendants")—who "were

involved in the facts and occurrences giving rise to the Complaint." (Id.) NCI therefore requests that it be permitted to file an Amended Complaint that includes allegations relating to the New Schemes as well as the New Defendants.

Federal Rule of Civil Procedure 15(a)(1) states that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading." Fed. R. Civ. P. 15(a)(1). At any time thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). When requested, "[t]he court should freely give leave when justice so requires." Id. "District courts have broad discretion to grant or deny leave to amend. In the absence of undue delay, bad faith, dilatory motive or undue prejudice, leave to amend is routinely granted. Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1405 (11th Cir. 1994) (citations omitted). However, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262-63 (11th Cir. 2004). "The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." Grant v. Countrywide Home Loans, Inc., No. 1:08-CV-1547-RWS, 2009 WL 1437566, at *8 (N.D. Ga. May 20, 2009) (Story, J.).

Here there is no indication that NCI's filing is the result of undue delay, bad faith, or dilatory motive. Neither have any of the Defendants asserted that they would suffer from undue prejudice were the Motion for Leave to Amend to be granted. Finally, no party has argued that the Amended Complaint, as a whole, is unable to survive Rule 12(b)(6) scrutiny, which would render the entire Amended Complaint futile.[2] The court therefore finds that justice requires that NCI be

_____

[2]The Goldin Defendants have filed a "Brief in Opposition to NCI Group Inc.'s Motion to Amend and in Support of the Goldin Defendants' Motion to Dismiss the Proposed Amended Complaint." [Doc. No. 100.] They assert that: (1) the court should deny NCI's Motion for Leave to Amend as futile; and (2) if the court grants NCI's Motion, the Amended Complaint should be dismissed as to its allegations against the Goldin Defendants. The basis for both arguments is the same—that the allegations in NCI's Amended Complaint relating to the Goldin Defendants fail under Rule 12(b)(6). However, the Goldin Defendants argue only that the specific portions of the Amended Complaint containing *allegations against them* fail under a Rule 12(b)(6) analysis—not that the entirety of the Amended Complaint is insufficient and thereby renders the amendment futile. (Br. in Opp'n to NCI's Mot. to Amend/in Supp. of Goldin Defs.' Mot. to Dismiss Proposed Am. Compl. 64.) Even assuming that the Goldin Defendants were to prevail on their arguments, the court would be without grounds to dismiss the Amended Complaint as a whole and therefore will deny the Motion for Leave to Amend on the grounds of futility. See Grant, 2009 WL 1437566, at *8 ("if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied"); see also Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) ("denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal") (citation and internal quotations omitted); St. Charles Foods, Inc. v. Ams. Favorite Chicken Co., 198 F.3d 815, 822 (11th Cir. 1999) ("When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail."). The Goldin Defendants' arguments in favor of dismissal of the claims

permitted to amend its complaint, and grants the Motion for Leave to Amend Complaint and to Add Parties.

## B.      Motion to Dismiss the Amended Complaint

The court next addresses the Goldin Defendants' Motion to Dismiss the Proposed Amended Complaint, also labeled their Opposition to NCI Group Inc.'s Motion to Amend. See supra, note 2. For the sake of simplicity, this will be referred to as the Goldin Defendants' Motion to Dismiss the Proposed Amended Complaint. First is a discussion of the existence of personal jurisdiction over the Goldin Defendants, then NCI's substantive claims against them.

### 1.      Personal Jurisdiction

The Goldin Defendants begin by asserting that personal jurisdiction is lacking for the entirety of NCI's federal RICO and state law claims as alleged against them. Each of these arguments will now be addressed.

#### a.      Federal RICO claims

The Goldin Defendants first argue that this court lacks personal jurisdiction over them with respect to NCI's federal RICO claims. They assert that NCI relies

---

alleged against them are addressed separately in the next section.

"expressly and exclusively upon 18 U.S.C. § 1965" in alleging personal jurisdiction, and state that neither 18 U.S.C. § 1965(a) nor (b) is capable of conferring the necessary personal jurisdiction. The Goldin Defendants say that NCI has failed to establish minimum contacts with at least one defendant, and likewise that the ends of justice do not require they be subject to this court's jurisdiction. The Goldin Defendants conclude that because 18 U.S.C. § 1965(a) and (b) are incapable of serving as a basis for personal jurisdiction, this court cannot entertain any of NCI's claims alleged against them as defendants.[3] NCI responds by pointing out that personal jurisdiction can also be asserted pursuant to 18 U.S.C. § 1965(d). It states that jurisdiction over the Goldin Defendants is not premised upon § 1965(b), and instead argues that § 1965(d) is a proper basis for personal jurisdiction.

"In analyzing a motion to dismiss for lack of personal jurisdiction . . . we first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997). As to this first inquiry, the federal RICO nationwide

_____

[3]The Goldin Defendants state only that this Motion is filed "pursuant to Fed. R. Civ. P. 12(b)." (Goldin Defs.' Mot. to Dismiss NCI's Am. Compl. at 1.) However, they assert dismissal is appropriate based on a lack of personal jurisdiction as well as a failure to state a claim, so the provisions of Rule 12(b)(2) and (6) are both at issue. See Fed. R. Civ. P. 12(b)(2), (6).

service of process provision provides that "process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs."  18 U.S.C. § 1965(d); see also Republic of Panama, 119 F.3d at 942.  "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction."  Republic of Panama, 119 F.3d at 942; see also In re Chase & Sanborn Corp., 835 F.2d 1341, 1344 (11th Cir. 1988), rev'd on other grounds sub. nom, Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989).  NCI has alleged, and the Goldin Defendants have not disputed, that they are defendants who are either (1) corporations that are organized and have their principal place of business in the United States; or (2) residents of the United States.  (Am. Compl. ¶¶ 6-11.)  The requirements of proper service as articulated in 18 U.S.C. § 1965(d) having been met, the statutory basis for personal jurisdiction over the Goldin Defendants is satisfied. See Republic of Panama, 119 F.3d at 942.

As for the due process inquiry, the Eleventh Circuit has specifically addressed the "scope of the limits imposed by the Fifth Amendment when jurisdiction is established over a domestic defendant via a nationwide service of process provision." Id.  In Republic of Panama, the court first found that the "constitutional notions of 'fairness' and 'reasonableness'" as articulated in World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980), applied with equal force when jurisdiction was being asserted under a federal statute. 119 F.3d at 945. The Republic of Panama court stated that in conducting an inquiry, "only if" a defendant had established that his liberty interests had been infringed, was the court then obliged to evaluate whether the Fifth Amendment's requirements of fairness and reasonableness had been satisfied. Id. at 946. This Fifth Amendment analysis consists of a balancing test that weighs "the burdens imposed on the individual defendant against the federal interest involved in the litigation." Id. However, it is clear that a court should not weigh the federal interests unless the defendant challenging jurisdiction has presented a compelling case of "constitutionally significant inconvenience" that would render jurisdiction unreasonable. Id. This requires a defendant to "demonstrate that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent." Id. at 948 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) (citation and internal quotations omitted)). Notably, inconvenience rises "to a level of constitutional concern" in "only . . . highly unusual cases." Id. at 947.

In asserting that the court lacks personal jurisdiction, the Goldin Defendants argue that the "only scheme in which [they] are alleged to have participated, is a

self-contained and exclusively Mississippi affair, involving defendants who are all citizens of Mississippi, and has no ties whatsoever to Georgia or this federal district." (Br. in Opp'n to NCI's Mot. to Amend/in Supp. of Goldin Defs.' Mot. to Dismiss Proposed Am. Compl. 18.) However, "a defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis." Republic of Panama, 119 F.3d at 946. "As a practical matter . . . state lines cannot provide an accurate measure of the burdens that would be imposed on a defendant by requiring him to defend an action in a particular forum. There is nothing inherently burdensome about crossing a state line." Id. (citation omitted). Therefore, the determination of whether litigation imposes an undue burden on a party cannot be made by "evaluating only a defendant's contacts with the forum state." Id.

Aside from their argument about ties with Mississippi, the Goldin Defendants do not assert that it would be "difficult" or "inconvenient" for them to adjudicate the case in this court. See Burger King Corp., 471 U.S. at 478. Therefore, the court finds that the Goldin Defendants have "failed to present a 'compelling case' that litigating this action in the chosen forum will put them at a 'severe disadvantage'" such that due process concerns arise. See Republic of Panama, 119 F.3d at 948 (citing Burger King, 471 U.S. at 478). Thus, as the requirements of both personal jurisdiction and adequate due process have been satisfied, the Goldin Defendants'

Motion to Dismiss is denied on this ground.

### b.     State Law Claims

The Goldin Defendants next argue that the court lacks personal jurisdiction over them for all of NCI's state law claims. They assert that 18 U.S.C. § 1965(d) confers personal jurisdiction only for federal RICO claims, and that there is no authority in this circuit "which supports a court's exercise of 'pendent personal jurisdiction.'" (Br. in Opp'n to NCI's Mot. to Amend/in Supp. of Goldin Defs.' Mot. to Dismiss Proposed Am. Compl. 22 n.11.)  The Goldin Defendants also argue that NCI's state law claims must be dismissed for lack of personal jurisdiction because NCI's federal RICO claims fail to state a claim.  (Id. at 23.)  NCI responds by arguing that courts in the Eleventh Circuit have upheld pendant personal jurisdiction, and concurrently asserts that the court has subject matter jurisdiction over the state claims.

In Acrotube, Inc. v. J.K. Financial Group, Inc., 653 F. Supp. 470, 477 (N.D. Ga. 1987) (Shoob, J.), the court addressed defendants' argument that the court lacked personal jurisdiction relating to the plaintiff's state law claims, despite having personal jurisdiction over the defendants for the federal claim.  After noting that the plaintiff's federal securities fraud claim "provides an independent basis for asserting personal jurisdiction over defendants," the Acrotube court held that

"[b]ecause plaintiff's other claims are factually and conceptually linked to the securities fraud claim, they c[an] be heard under the Court's pendent jurisdiction." Id. The court concluded that as long as the federal securities claim was part of the case, it was inappropriate to dismiss the plaintiff's other claims against the defendants pursuant to Rule 12(b)(2). Id.; see also Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC, No. 08-80017-CIV, 2009 WL 901500, at *7 n.3 (S.D. Fla. 2009) (recognizing pendent personal jurisdiction); Exhibit Icons, LLC v. XP Cos., 609 F. Supp. 2d 1282, 1299 n.15 (S.D. Fla. 2009) (same). Similarly, in Gill v. Three Dimension Systems, Inc., 87 F. Supp. 2d 1278, 1282-83 (M.D. Fla. 2000), the defendants argued that although the court admittedly had personal jurisdiction over them because of the nationwide service of process provision in the federal statute at issue, the service of process provisions could "not be used to obtain personal jurisdiction over them with regard to plaintiff's pendent state claims." Id. at 1283. In holding that the federal statute's nationwide service provision bestowed personal jurisdiction over the defendants on the plaintiff's federal securities claim and pendant state claims, the court provided this rationale:

> When a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a state claim properly within the court's subject-matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus

of operative facts. The defendant will have to adjudicate the facts of the federal claim, and it could impose only a minimal burden to require the defendant to provide a defense on the factually-related state claim. We agree with the observation that judicial economy and convenience of the parties is best facilitated by a consideration of all legal theories arising from a single set of operative facts.

Id. at 1283 (citation and internal quotations omitted).

First, NCI asserts, and the Goldin Defendants do not dispute, that the court has subject matter jurisdiction over the Goldin Defendants for NCI's state law claims. 28 U.S.C. § 1367(a) provides:

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). NCI's Amended Complaint makes clear that its state law claims arise out of the same set of facts that form the basis of its federal RICO claims. Next, as set forth above, the federal RICO claims provide an independent basis for exercising personal jurisdiction over the Goldin Defendants. The principle of pendent personal jurisdiction recognized by courts in this Circuit, says that federal RICO's nationwide service provision "bestows personal jurisdiction" over the Goldin Defendants on NCI's federal RICO and pendent state claims. Gill, 87 F. Supp. 2d at 1283; Acrotube, 653 F. Supp. at 477. The court thus concludes that it has

personal jurisdiction over the Goldin Defendants regarding NCI's state law claims, and denies the Motion to Dismiss on this ground as well.[4]

## 2. Federal RICO Claims

The Goldin Defendants next argue that NCI's federal RICO claims are defective as alleged and must therefore be dismissed. They assert that NCI has failed to adequately allege the existence of (1) an enterprise; (2) a pattern of racketeering activity; (3) predicate acts; (4) relatedness; (5) continuity; and (6) relationship. The Goldin Defendants argue that as a result, NCI has not stated a claim for violations of RICO 18 U.S.C. § 1962(b)-(d), and therefore the claims must be dismissed.

Federal RICO prohibits the following activities:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to

---

[4]The Goldin Defendants' argument, that NCI has failed to properly state federal RICO claims, is addressed in the next section.

acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(a)-(d). The Code defines "pattern of racketeering activity" as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The term "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Finally, "racketeering activity" is defined as

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year;

(B) any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), . . . section 1952 (relating to

-20-

racketeering), . . . section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), . . . sections 2314 and 2315 (relating to interstate transportation of stolen property), . . . section 2320 (relating to trafficking in goods or services bearing counterfeit marks) . . . .

18 U.S.C. § 1961(1)(A)-(B). The Supreme Court has stated that "RICO is to be read broadly . . . [and] liberally construed to effectuate its remedial purposes." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 497-98 (1985) (citation and internal quotations omitted).

NCI's allegations first state that the Goldin Secondary Scheme was perpetrated by Mr. Carroll and the Goldin Defendants at MCM. NCI asserts that A. Goldin "would arrange for a shipment of the Goldin Coils to be delivered to MCM," and Mr. Carroll would thereafter arrange for the Goldin Coils to be coated, charging the Goldin Defendants less than the market value of the coating or NCI's coating costs. (Am. Compl. ¶ 46.) NCI alleges that once the Goldin Coils were coated, they would be packaged with the Master Coasters' trademark and shipped pursuant to Goldin Metals' instructions. In exchange, Goldin Metals would pay kickbacks to Mr. Carroll for coating the Goldin Coils at below-market prices. All of this was done without NCI's knowledge or permission. NCI specifically describes how employees painted Goldin Coil No. 502739-03-01, weighing 8,740 pounds, for $489.44—which constituted a loss of $504.41 to NCI. NCI alleges that "[a]t least

4,424 coils were transferred to Goldin Metals as part of the Goldin Secondary Scheme between 1996 to 2006." (Id. ¶ 50.) NCI describes that A. Goldin, S. Goldin, Martin Goldin, and Jack Goldin all "requested Carroll to arrange for the Goldin [Coils] to be coated at below-market and below-cost prices and paid Carroll kickbacks," and that Goldin Metals profited from this scheme, being "essential for the conduction, implementation and concealment of the Goldin Secondary Scheme." (Id. ¶ 51.)

NCI further alleges that the Defendants are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962, and that "Defendants, acting in concert to implement, conduct and conceal the NCI-Targeted Scheme,[5] constitute an 'enterprise' within the meaning of 18 U.S.C. §§ 1961(4) and 1962" ("Enterprise"). (Id. ¶ 108.) As to 18 U.S.C. § 1962(b), NCI states that "[t]hrough a pattern of racketeering activities in the NCI-Targeted Scheme, Defendants acquired or maintained, directly or indirectly, an interest in or control of the Enterprise, which was engaged in, or the activities of which, affect interstate commerce within the meaning of 18 U.S.C. §§ 1961(5) and 1962(b)." (Id. ¶ 109.) Regarding § 1962(c), NCI alleges that the Defendants were

_____

[5]All four of the schemes that NCI alleges occurred between 1995-2006 are alleged to have involved the overlapping participation of individuals, particularly Mr. Carroll, and NCI refers to them jointly as the "NCI-Targeted Scheme." (Id. ¶ 59.)

owners of, employed by, or associated with the Enterprise, which was engaged in, or the activities of which affects interstate commerce, and that the Defendants conducted or participated in the conduct of the Enterprise's affairs and the NCI-Targeted Scheme, and conspired to do so, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(5) and 1962(c). As to § 1962(d), NCI alleges that the Defendants conspired to violate the provisions of 18 U.S.C. § 1962(b) and (c). NCI states that each Defendant's participation in the Enterprise was essential to the success of the Enterprise and the NCI-Targeted Scheme.

Finally, NCI alleges that the Defendants have engaged in and/or knowingly participated in, the operation or management of the Enterprise and the NCI-Targeted Scheme through a continuing, related pattern of racketeering activity, by engaging in a series of two or more predicate acts of racketeering within ten years. (Id. ¶ 113.) NCI describes as "racketeering activity" Defendants' alleged perpetration of (1) mail fraud in violation of 18 U.S.C. § 1341; (2) wire fraud in violation of 18 U.S.C. § 1343; (3) transportation in interstate commerce of money or property stolen or taken by fraud in violation of 18 U.S.C. § 2314; (4) interstate travel or use of mail in aid of racketeering activities in violation of 18 U.S.C. § 1952; (5) engaging in monetary transactions in property acquired by unlawful activity in violation of 18 U.S.C. § 1957; (6) receiving, possessing, concealing, storing, selling

or disposing of any goods, ware, merchandise or money which have crossed state lines after being stolen in violation of 18 U.S.C. § 2315; and (7) trafficking in counterfeit goods or services in violation of 18 U.S.C. § 2320.

Specifically with regard to Defendants' alleged violation of 18 U.S.C. § 2320, which prohibits "[t]rafficking in counterfeit goods or services," NCI states that the Defendants (1) intentionally and knowing trafficked or attempted to traffic in goods and services knowing that a counterfeit Master Coaters' trademark had been applied; (2) knowingly used a counterfeit Master Coaters' trademark in connection with the NCI-Targeted Scheme; (3) the counterfeit mark was identical with, or substantially indistinguishable from the Master Coaters' trademark which is registered in the United States Patent and Trademark Office ("PTO"); (4) the counterfeit Master Coaters' trademark was applied and used in connection with the goods or services for which the Master Coaters' trademark is registered with the PTO; and (5) use of this counterfeit mark was likely to cause confusion, mistake, or deceive others.

As for Defendants' alleged violation of 18 U.S.C. § 1957, which prohibits "[e]ngaging in monetary transactions in property derived from specified unlawful activity," NCI alleges that the Defendants knowingly engaged or attempted to engage in monetary transactions that they knew involved property derived from

their unlawful activity and participation in the NCI-Targeted Scheme. It likewise states that the monetary transactions related to the NCI-Targeted Scheme affected or involved interstate commerce and involved property worth more than $10,000. NCI concludes by stating that it "sustained injury to its business and property by Defendants' violations of 18 U.S.C. § 1962," also claiming its entitlement to treble damages and attorneys' fees. (Id. ¶ 114.)

The court finds that NCI has sufficiently pled claims against the Goldin Defendants for violations of federal RICO, 18 U.S.C. § 1962(b)-(d) so as to survive the Motion to Dismiss. NCI has alleged facts supporting the existence of an enterprise—asserting that "the Defendants were operating several related schemes to defraud NCI and the Clients," and describing with particularity the overlapping participation of individuals in the schemes, as well as specific acts undertaken by Defendants "as part of the NCI-Targeted Scheme." (See Am. Compl. ¶¶ 23, 60, 63, 67.) The underlying acts alleged, *inter alia*, violations of 18 U.S.C. §§ 1957 and 2320, which constitute racketeering activity pursuant to 18 U.S.C. § 1961(1)(B).[6] Likewise,

---

[6]18 U.S.C. § 1957 states: "(a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)." 18 U.S.C. § 1957(a). Subsection (d) states, in part, that "[t]he circumstances referred to in subsection (a) are—(1) that the offense under this section takes place in the United States or in the special maritime and territorial

NCI has asserted and described that the pattern of racketeering the Goldin Defendants engaged in constituted two or more acts within the last ten years, as required by the statute.  The continuity element is satisfied, as NCI has alleged that the NCI-Targeted Scheme "operated continually from approximately 1995 until 2006."  (Am. Compl. ¶ 59); see also Cox v. Adm'r U.S. Steel & Carnegie, 17 F.3d 1386, 1398 (11th Cir. 1994) (finding continuity satisfied where the allegations were that the racketeering activity was conducted over a two year time period). Consequently, in its Amended Complaint, NCI sets forth ample factual allegations, accepted as true for the purposes of this Motion, which are sufficient to state a claim for violations of 18 U.S.C. § 1962(b)-(d).  See M.T.V., 446 F.3d at 1156; Iqbal, 129 S. Ct. at 1949.  As a result, NCI's Amended Complaint gives the Goldin Defendants

_____

jurisdiction of the United States . . . ."  18 U.S.C. § 1957(d)(1).  18 U.S.C. § 2320 prohibits the following:

> Whoever; intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services . . . the use of which is likely to cause confusion, to cause mistake, or to deceive, shall, if an individual, be fined not more than $2,000,000 or imprisoned not more than 10 years, or both, and, if a person other than an individual, be fined not more than $5,000,000. . . .

18 U.S.C. § 2320(a)(1) (footnote omitted).  Because NCI has sufficiently alleged these two predicate acts of racketeering activity, as necessary to state a federal RICO claim, the court will not address NCI's remaining allegations of racketeering activity made pursuant to 18 U.S.C. § 1961(1)(B).

"fair notice of what the . . . claim[s] [are] and the grounds upon which [they] rest[]."

Twombly, 550 U.S. at 555. Therefore, the court denies the Goldin Defendants'

Motion to Dismiss the federal RICO claims found in Count 8 of NCI's Amended

Complaint.[7]

### 3. State Law Claims

The Goldin Defendants next argue that NCI's state law claims against them

must be dismissed for failure to state a claim. The Goldin Defendants assert that

dismissal is appropriate for NCI's claims alleging (1) fraud; (2) violation of Georgia

RICO; (3) conversion; (4) aiding and abetting breach of fiduciary duty; (5) tortious

interference with contractual or business relations; and (6) negligence.

### a. Fraud

As an initial matter, the Goldin Defendants argue that choice of law principles

dictate the use of Mississippi law in analyzing NCI's fraud claim against them. For

---

[7]In arguing for dismissal of NCI's claims, the Goldin Defendants
repeatedly seek to hold NCI to a standard that is unrealistic given the current
posture of the case. At the Motion to Dismiss stage, discovery *has not yet been
conducted*. "[T]he pleading standard Rule 8 announces does not require detailed
factual allegations, but it demands more than an unadorned,
the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949
(citation and internal quotations omitted). "To survive a motion to dismiss, a
complaint must contain sufficient factual matter . . . to state a claim to relief that
is plausible on its face . . . [or] plead[] factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct
alleged." Id. (citations and internal quotations omitted).

tort claims, "Georgia applies the choice of law doctrine lex loci delictis." <u>Int'l Bus. Machs. Corp. v. Kemp</u>, 244 Ga. App. 638, 640, 536 S.E.2d 303, 306 (2000). This doctrine instructs that the claims are "governed by the substantive law of the place where the tort or wrong occurred." <u>Id.</u> For torts of a transitory nature, like fraud, the place of the wrong is where the "last event occurred necessary to make an actor liable for the alleged tort." <u>Id.</u> Importantly, "the 'last event' necessary to make an actor liable for fraud is the injury, and consequently, for purposes of lex loci delictis, the place of the wrong is where that injury is sustained." <u>Id.</u> at 641, 536 S.E.2d at 306; <u>see also</u> <u>Luigino's Int'l, Inc. v. Miller</u>, 311 F. App'x 289, 292 (11th Cir. 2009) ("Under Georgia's choice of law doctrine of *lex loci delictis*, the law of the state where the injury occurred governs the fraud action.").

NCI alleges that as a result of the Defendants' fraud, it suffered injury. (Am. Compl. ¶ 76.) NCI also states that it maintains its principal place of business in Houston, Texas, but that its MCG division is located in Georgia, and its MCM division is located in Mississippi. (<u>Id.</u> ¶ 2.) However, because the elements of fraud are similar in all three states, the court need not decide which state's law applies to the claim for the purposes of this Motion. In Georgia, a fraud claim consists of five elements: (1) a false representation; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages.

ComSouth TeleServices, Inc. v. Liggett, 243 Ga. App. 446, 448, 531 S.E.2d 190, 192 (2000); see also McGee v. Swarek, 733 So.2d 308, 312 (Miss. Ct. App. 1998) (Mississippi law requires similar elements for a fraud claim); DiBello v. Charlie Thomas Ford, Ltd., No. 01-08-00549-CV, 2009 WL 566442, at *3 (Tex. App. Mar. 5, 2009) (Texas law requires similar elements as well).

NCI alleges that the Defendants conspired and engaged in conduct constituting fraud, including but not limited to: (1) falsifying and manipulating MCG's and MCM's computer records; (2) developing, implementing, participating in, and profiting from the NCI-Targeted Scheme; (3) concealing the NCI-Targeted Scheme from NCI; (4) incorrectly designating or labeling coil as secondary or scrap; and (5) concealing evidence of kickbacks, bribes or other related benefits. It incorporates the allegations made previously in the Amended Complaint that describe in detail the Goldin Secondary Scheme. NCI alleges that the fraud occurred through false representations stemming from both affirmative acts and omissions, known to be false, and intentionally made to induce NCI to act or refrain from acting. NCI further states that as a result, it justifiably relied on these acts and omissions, and suffered damages in the course of this reliance. Taking its allegations to be true, NCI's Amended Complaint contains enough factual allegations to state a claim for fraud. In other words, NCI has "alleged enough facts

to suggest, raise a reasonable expectation of, and render plausible," its fraud claim against the Goldin Defendants. <u>Watts</u>, 495 F.3d at 1296. Therefore the Goldin Defendants' Motion to Dismiss the fraud count is denied.

### b. Georgia RICO

The Goldin Defendants next argue that NCI has not sufficiently alleged claims against them for violations of Georgia RICO, O.C.G.A. § 16-14-4(a)-(c). O.C.G.A. § 16-14-4 describes the following prohibited activities:

(a) It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

(b) It is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

(c) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section.

O.C.G.A. § 16-14-4(a)-(c). Notably, Georgia RICO "is modeled upon and closely analogous to the Federal RICO statute." <u>Martin v. State</u>, 189 Ga. App. 483, 485, 376 S.E.2d 888, 892 (1988). The Georgia Code next defines the term "enterprise" as

any person, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity; or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental as well as other entities.

O.C.G.A. § 16-14-3(6). Furthermore, "pattern of racketeering activity" is defined,

in part, as

> (A) Engaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such acts occurred after July 1, 1980, and that the last of such acts occurred within four years, excluding any periods of imprisonment, after the commission of a prior act of racketeering activity . . . .

O.C.G.A. § 16-14-3(8)(A). And finally, "racketeering activity" is defined in two

different subsections:

> (A) "Racketeering activity" means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment under the following laws of this state.
> . . . .
>> (xxix) Any conduct defined as "racketeering activity" under 18 U.S.C. Section 1961 (1)(A), (B), (C), and (D) . . . .
>
> (B) "Racketeering activity" shall also mean any act or threat involving murder, kidnapping, gambling, arson, robbery, theft, receipt of stolen property, bribery, extortion, obstruction of justice, dealing in narcotic or dangerous drugs, or dealing in securities which is chargeable under the laws of the United States or any of the several states and which is punishable by imprisonment for more than one year.

O.C.G.A. § 16-14-3(9)(A)(xxix), (B).

In its Amended Complaint, NCI first repeats and re-alleges the allegations it

made against the Goldin Defendants regarding the Goldin Secondary Scheme, and

which was described above. NCI then alleges that the Defendants are "persons" within the meaning of Georgia RICO, and that they acted in concert to implement, conduct and conceal the NCI-Targeted Scheme, constituting an "enterprise" pursuant to Georgia RICO. Regarding O.C.G.A. § 16-14-4(a), NCI alleges that the Defendants violated the statute by acquiring or maintaining, directly or indirectly, an interest in or control of an entity, real property or personal property, through a continuous and related pattern of racketeering activity or the proceeds derived therefrom. Relating to O.C.G.A. § 16-14-4(b), NCI asserts that the Defendants were employed by or associated with the Enterprise to conduct or participate in, directly or indirectly, the Enterprise and the NCI-Targeted Scheme through a continuous and related pattern of racketeering activity. Finally, NCI also alleges that the Defendants violated O.C.G.A. § 16-14-4(c) by conspiring or endeavoring to violate O.C.G.A. § 16-14-4(a) and (b).

NCI further alleges that the Defendants have engaged in or knowingly participated in a continuous and related pattern of racketeering activity

> by engaging in a series of two or more related predicate acts of racketeering, which furthered one or more incidents, schemes or transactions with the same or similar intents, results, accomplices, victims or methods of commission or that are otherwise interrelated, with the last such act occurring within four years of the previous racketeering act.

(Am. Compl. ¶ 123.) NCI lists a host of predicate acts including: (1) theft in

violation of O.C.G.A. § 16-8-2; (2) theft in violation of O.C.G.A. § 16-8-3; (3) theft in

violation of O.C.G.A. § 16-8-5; (4) theft in violation of O.C.G.A. § 16-8-6; (5) theft in

violation of O.C.G.A. § 16-8-7; (6) theft in violation of O.C.G.A. § 16-8-8; (7) theft in

violation of O.C.G.A. § 16-8-9; (8) forgery in violation of O.C.G.A. § 16-9-1; (9)

computer crimes in violation of O.C.G.A. § 16-9-93 et seq.; (10) fraud; (11) violations

of federal law as listed in the Amended Complaint; and (12) theft pursuant to the

laws of the United States. NCI concludes by stating that as a result of the

Defendants' violations of O.C.G.A. § 16-14-4, it sustained injury to both its business

and property, thereby entitling it to damages.

NCI has sufficiently stated a claim for violations of Georgia RICO § 16-14-4(a)-(c) against the Goldin Defendants.[8] NCI alleges that the Goldin Defendants

engaged in at least two acts of racketeering activity, in furtherance of one or more

incidents, schemes, or transactions that have the same or similar intents, results,

---

[8]The Goldin Defendants argue that "NCI's Georgia RICO claims against the Goldin Defendants are non-starters because the Goldins' alleged misconduct occurred in Mississippi. Of course, Georgia's RICO Act has no application in Mississippi" because the laws of one state have no operation outside of its territory. (Br. in Opp'n to NCI's Mot. to Amend/in Supp. of Goldin Defs.' Mot. to Dismiss Proposed Am. Compl. 48.) The court understand this argument to present a choice of law issue. However, the Goldin Defendants have neither adequately addressed the argument—surprising, given that their brief is well over twice the length permitted by the Rules of the court—nor explained how resolution of this issue would result in a dismissal of the claim alleged against them.

accomplices, victims, or methods of commission. O.C.G.A. § 16-14-3(8)(A).

O.C.G.A. § 16-14-3(9)(A)(xxix) specifies that racketeering activity consists of "[a]ny conduct defined as 'racketeering activity' under 18 U.S.C. Section 1961 (1)(A), (B), (C), and (D)," and the court has already found that NCI has properly alleged facts supporting the Goldin Defendants' violations of 18 U.S.C. § 1957 and 18 U.S.C. § 2320, which constitute racketeering activity under federal RICO.[9] Therefore, NCI's allegations as to predicate acts pursuant to Georgia RICO are sufficient. NCI's factual allegations that the Goldin Defendants violated O.C.G.A. § 16-14-4(a)-(c) are sufficient to state a well-pleaded claim. Therefore, the Motion to Dismiss Count IX of the Amended Complaint against the Goldin Defendants is denied.

### c. Conversion

The Goldin Defendants also argue that NCI has failed to state a claim against them for conversion. In Georgia, a claim for conversion requires that the plaintiff allege "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." Metzger v. Americredit Fin. Servs., Inc., 273 Ga. App. 453,

---

[9]Because NCI has sufficiently alleged two predicate acts of racketeering activity, as necessary to state a Georgia RICO claim, the court will not address NCI's remaining allegations of racketeering activity by the Goldin Defendants made pursuant to O.C.G.A. § 16-14-3(9)(A) and (B).

454, 615 S.E.2d 120, 122 (2005) (citation and internal quotations omitted).[10] Notably, "[d]emand and refusal is necessary only when the defendant comes into possession of the property lawfully." Williams v. Nat'l Auto Sales, Inc., 287 Ga. App. 283, 285, 651 S.E.2d 194, 197 (2007). Lawfully coming into possession of the property means that the defendant "finds it, and retains it for the true owner, or where he obtains the possession of the property, by the *permission or consent* of the plaintiff." Id. Where the property was unlawfully acquired, the plaintiff must allege that the defendant disposed of the property without authority and retained the proceeds. Id. at 286, 651 S.E.2d at 197.

NCI alleges that as part of the NCI-Targeted Scheme, Defendants removed and sold steel coils, without authorization, that they knew NCI or its clients owned or possessed. NCI further asserts that in turn, Defendants benefitted from the unauthorized removal of steel coils. It states that as part of this scheme, the Defendants exercised the right of ownership over and took possession of NCI's property, and/or exhibited acts of dominion over NCI's property or hostility toward NCI's property rights. As previously noted, NCI describes in detail the

_____

[10]Both parties agree that the elements of a claim for conversion are similar under Mississippi law. (Pl.'s Reply to Goldin Defs.' Resp. to Mot. for Leave to Amend Compl. and Add Parties 48 n.24; Br. in Opp'n to NCI's Mot. to Amend/in Supp. of Goldin Defs.' Mot. to Dismiss Proposed Am. Compl. 54.)

roles of each of the Goldin Defendants in the Goldin Secondary Scheme, and the specifics of this scheme. (Am. Compl. ¶¶ 42-51.) Taken as true for the purposes of this Motion, NCI has asserted facts that sufficiently alleged a claim for conversion against the Goldin Defendants. Thus, the court denies the Goldin Defendants' Motion to Dismiss the conversion claim.

### d. Aiding and abetting breach of fiduciary duty

The Goldin Defendants next argue that NCI's claim against them for aiding and abetting breach of fiduciary duty should be dismissed for failure to state a claim.[11] Under Georgia law, a claim for aiding and abetting breach of fiduciary duty requires:

---

[11]The Goldin Defendants argue that Georgia's choice of law rule, lex loci delicti, dictates that Mississippi law applies to this claim. (Defs.' Reply Br. in Supp. of Mot. to Dismiss Am. Compl. 44.) They likewise state that their research has "turned up no authority recognizing a cause of action under Mississippi law for aiding and abetting the breach of a fiduciary duty." (Br. in Opp'n to NCI's Mot. to Amend/in Supp. of Goldin Defs.' Mot. to Dismiss Proposed Am. Compl. 55.) However, as previously stated, Georgia law focuses on "the place where the injury sustained was suffered rather than the place where the act was committed . . . [or] where the last event necessary for liability occurs." Garland v. Advanced Med. Fund, L.P. II, 86 F. Supp. 2d 1195, 1205 (N.D. Ga. 2000) (Forrester, J.) (applying this choice of law analysis to the plaintiff's breach of fiduciary duty claim). NCI has not addressed this issue in its Response Brief. Because the court is unable to ascertain whether Georgia, Texas, or Mississippi law applies to this claim, see supra, at 28, for now it will use Georgia law to analyze the claim. The parties may further address the choice of law issue upon a Motion for Summary Judgment if they so choose.

(1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Insight Tech., Inc. v. FreightCheck, LLC, 280 Ga. App. 19, 25-26, 633 S.E.2d 373, 379 (2006) (footnotes omitted). In its Amended Complaint, NCI alleges that through improper action or wrongful conduct that was unauthorized, the Goldins acted to procure a breach of certain NCI employees. In its description of the Goldin Secondary Scheme, NCI makes clear that the Goldin Defendants made arrangements and agreements with Mr. Carroll that resulted in a breach of his fiduciary duties—namely directing employees to perform work on the Goldin Coils, incorrectly charging the Goldin Defendants, placing a fake Master Coaters' trademark on the coils, and receiving kickbacks for his actions. (Am. Compl. ¶¶ 42-51, 89.) NCI further alleges that the Goldin Defendants knew that the NCI employees, in particular Mr. Carroll, owed NCI a fiduciary duty "by virtue of [his] employment" acting purposely and with malice and intent to injure NCI.[12] (Id.

---

[12]The Goldin Defendants argue that this is insufficient to establish a fiduciary duty, and cite to Atlanta Market Center Management Co. v. McLane, 269 Ga. 604, 607, 503 S.E.2d 278, 281-82 (1998) in support. However, the case actually states the following:

¶ 88.)   Finally, NCI alleges that the Goldin Defendants' "wrongful conduct proximately caused damages to NCI."  (Id. ¶ 90.)

In alleging a claim for aiding and abetting breach of fiduciary duty, NCI has satisfied its burden of alleging "enough facts to suggest, raise a reasonable expectation of, and render plausible" its claim.  Watts, 495 F.3d at 1296.  The allegations, if true, state a claim for violation of Georgia's law prohibiting aiding and abetting breach of fiduciary duty.  Thus, the Goldin Defendants' Motion to Dismiss this claim is also denied.

> **e.**   **Tortious interference with contractual or business relations**

The Goldin Defendants next argue that NCI has failed to properly state a claim for tortious interference with contractual or business relations.[13]  In Georgia,

---

The employee-employer relationship is not one from which the law will necessarily imply fiduciary obligations; *however,* the facts of a particular case may establish the existence of a confidential relationship between an employer and an employee concerning a particular transaction, thereby placing upon the parties the fiduciary obligations associated with a principal-agent relationship.

Id. (emphasis added).  The facts as alleged by NCI are sufficient to encompass this type of a relationship, and as such, NCI has met its burden at this stage of the litigation.

[13]The Goldin Defendants begin by arguing that NCI's claim is deficient because NCI "realleges the allegations contained in paragraphs 1-7 and 76-78" only.  (Br. in Opp'n to NCI's Mot. to Amend/in Supp. of Goldin Defs.' Mot. to Dismiss Proposed Am. Compl. 57.) This argument, representative of those made

a claim for tortious interference with contractual or business relations contains the following elements:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Duke Galish, LLC v. Manton, 291 Ga. App. 827, 832, 662 S.E.2d 880, 884 (2008) (citation and internal quotations omitted). In its Amended Complaint, NCI has alleged a number of facts supporting its assertion of improper and wrongful conduct on the part of the Goldin Defendants due to their participation in the Goldin Secondary Scheme. NCI says that the Goldin Defendants "intentionally and maliciously carried out" the schemes to cause NCI damages. (Am. Compl. ¶ 93.) NCI alleges further that in so doing, the Goldins induced NCI employees to breach their contractual obligations with NCI. (Id. ¶ 94.) As has been described previously, NCI alleged that the Goldin Secondary Scheme involved the Goldin

by the Goldin Defendants throughout their brief, contributes nothing toward resolving the Motion, and it is hard to believe the Goldin Defendants actually believe it in any event. NCI states that it "repeats and re-alleges the allegations contained in Paragraphs 1 through 7- and 76-78 as if more fully set forth herein." (Am. Compl. ¶ 91.) However, reference to NCI's Amended Complaint makes clear that this is a typographical error, and the court will read it to have re-alleged the allegations contained in paragraphs 1-70.

Defendants and Mr. Carroll, an employee of NCI. NCI explains that the contractual obligation to which it refers is Mr. Carroll's employment agreement with NCI, and the court similarly finds this to be sufficiently clear from the allegations in the Amended Complaint. (See Pl.'s Reply to Goldin Defs.' Resp. to Mot. for Leave to Amend Compl. and Add Parties 47.) NCI also alleges that the Goldin Defendants caused NCI's customers to discontinue or fail to enter into anticipated business relationships with NCI by virtue of the NCI-Targeted Scheme.[14] Finally, NCI states that the Goldin Defendants' tortious conduct was the proximate cause of damage to it.

NCI has adequately alleged facts which are sufficient to state a claim for tortious interference with business or contractual relations under Georgia law,[15] and the Goldin Defendants' Motion to Dismiss the claim is denied.

### f. Negligence

---

[14]NCI has not alleged any actual facts to support this claim. See Twombly, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do."). However, because NCI has alleged facts sufficient to support its claim that the Goldin Defendants induced a breach of Mr. Carroll's contractual obligations with NCI, this failure is not fatal to the claim.

[15]The parties agree that Mississippi law contains similar requirements for a tortious interference with business or contractual relations claim. (Br. in Opp'n to NCI's Mot. to Amend/in Supp. of Goldin Defs.' Mot. to Dismiss Proposed Am. Compl. 60; Pl.'s Reply to Goldin Defs.' Resp. to Mot. for Leave to Amend Compl. and Add Parties 46 n.22.)

Finally, the Goldin Defendants assert that NCI has failed to state a claim for negligence against them. In Georgia, a claim for negligence contains the following elements:

> (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1297 (11th Cir. 2008) (citation and internal quotations omitted).[16] In its Amended Complaint, NCI repeats and re-alleges the allegations contained in paragraphs 1-70 and 76-78 of the pleading, and likewise alleges that the Goldin Defendants "owed NCI a duty of good faith and fair dealing" as well as "a duty of ordinary care." (Am. Compl. ¶ 102.) NCI then asserts that the Goldin Defendants breached these duties to NCI "by participating in and profiting from the NCI-Targeted Scheme." (Id. ¶ 103.) Finally, NCI alleges that as a result it has suffered damages. (Id. ¶ 76.)

As an initial matter, the duty of good faith and fair dealing is an implied duty imposed upon parties to a contract, applicable to the contract's "performance and enforcement." ULQ, LLC v. Meder, 293 Ga. App. 176, 179, 666 S.E.2d 713, 717

---

[16]Mississippi law requires these same elements for a negligence claim. See Duckworth v. Warren, 10 So.3d 433, 440 (Miss. 2009).

(2008); see also Tommy McBride Realty, Inc. v. Nicholson, 286 Ga. App. 135, 136, 648 S.E.2d 468, 470 (2007) ("A duty of good faith and fair dealing is implied in all contracts in this state.") (citation and internal quotations omitted); Limbert v. Miss. Univ. for Women Alumnae Ass'n, 998 So.2d 993, 998 (Miss. 2008) ("All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement."). Here, NCI has neither mentioned nor alleged the existence of a contract between itself and the Goldin Defendants. Therefore, NCI has not alleged facts which, if accepted as true, can support the idea that the Goldin Defendants owed NCI a duty of good faith and fair dealing.

The Goldin Defendants argue that NCI's negligence claim fails because "the complaint charges the Goldins only with *intentional* misconduct, not negligent misconduct." (Br. in Opp'n to NCI's Mot. to Amend/in Supp. of Goldin Defs.' Mot. to Dismiss Proposed Am. Compl. 62.) However, the Goldin Defendants have not provided, and the court is not aware of, any authority requiring NCI to specifically allege that the conduct was "negligent" in so many words. As set out above, a claim for negligence requires only the elements of duty, breach, causation, and injury. Adventure Outdoors, 552 F.3d at 1297. NCI has asserted factual allegations sufficient to support each of these elements, describing in detail the Goldin Defendants' alleged misconduct. Furthermore, the Federal Rules provide for

alternative pleading, and parties routinely allege both fraud and negligence claims in their complaints. <u>See, e.g.</u>, Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); <u>Reynolds v. Fla. Highway Prods., Inc.</u>, No. CV507-78, 2008 WL 5430332, at *1 (S.D. Ga. Dec. 31, 2008) (asserting claims for negligence and fraud, both of which survived summary judgment). The court therefore finds that NCI has sufficiently stated a claim for negligence against the Goldin Defendants, and denies their Motion to Dismiss this claim.

In summary, NCI has adequately alleged claims for violations of (1) federal RICO; (2) fraud; (3) Georgia RICO; (4) conversion; (5) aiding and abetting breach of fiduciary duty; (6) tortious interference with contractual or business relations; and (7) negligence. The Goldin Defendant's Motion to Dismiss is hereby DENIED.

## C. Motions to Dismiss the Counterclaims of Messrs. Carroll and Coots

NCI has also filed Motions to Dismiss the counterclaims alleged by Messrs. Coots and Carroll against it. NCI first states that each of these individuals asserts counterclaims against it for attorneys' fees and costs of defense. However, these counterclaims are unaccompanied by any other counterclaims against NCI. NCI argues that counterclaims for attorneys' fees and costs "cannot be asserted as an

independent cause of action prior to termination of the underlying litigation," and concludes that the claims should be dismissed accordingly. (Mem. of Law in Supp. of Pl.'s Mot. to Dismiss Def. Carroll's Counterclaim 2; Mem. of Law in Supp. of Pl.'s Mot. to Dismiss Def. Coots's Counterclaim 2.)

As his sole counterclaim against NCI, Mr. Coots asserts a claim for "attorney fees and costs of defense pursuant to O.C.G.A. 9-15-14 or applicable federal law." (Def. Coots's Answer to Compl. at 26.) Mr. Coots alleges that this award is appropriate

> to the extent that it will be shown that Plaintiff has acted in bad faith, has been stubbornly litigious, and has presented false charges and allegations against Darrell L. Coots that the Plaintiff either knew to be false or were made with a reckless disregard as to their veracity and/or to the extent that it is shown that Plaintiff has engaged in the tort of abusive litigation in violation of O.C.G.A. 51-7-80 and 51-7-81.

(Id. at 26-27.) Mr. Coots maintains that he reserves the right to amend and supplement his counterclaim with other claims, including but not limited to claims for defamation and injury to reputation. (Id. at 27.) Mr. Carroll makes an identical assertion for attorneys' fees and costs against NCI in his respective Answer. (Answer & Defenses of Lonnie Carroll at 15.)

As an initial matter, O.C.G.A. § 9-15-14 "is unavailable to civil litigants in federal court." Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988) (Forrester, J.). The statute's wording itself limits its applicability to state courts:

> In any civil action *in any court of record in this state*, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense or other position. . . .

O.C.G.A. § 9-15-14(a) (emphasis added). Therefore, because this case is in federal court, Messrs. Carroll's and Coots's counterclaims against NCI for attorneys' fees and costs cannot be maintained pursuant to this statutory provision.

Messrs. Carroll and Coots also base their claims for attorneys' fees and costs on a Georgia code provision that provides liability for abusive litigation. O.C.G.A. § 51-7-81 prohibits the following conduct: "Any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts: (1) [w]ith malice; and (2) [w]ithout substantial justification." O.C.G.A. § 51-7-81. However, the statute specifically states that "[a]n action or claim under this article requires the final termination of the proceeding in which the alleged abusive litigation occurred and must be brought within one year of the date of final termination." O.C.G.A. § 51-7-84(b); see also Westinghouse Credit Corp. v. Hall, 144 B.R. 568, 579 (S.D. Ga. 1992). This case being in the initial stages of discovery, Messrs. Carroll and Coots have prematurely alleged their claim for attorneys' fees and costs against NCI in relying

on this code provision.  See Corey v. Clear Channel Outdoor, Inc., No. A09A0304, 2009 WL 2025256, at *4-*5 (Ga. Ct. App. July 14, 2009) (affirming trial court's dismissal of the defendant's § 51-7-81 counterclaim because it would not be ripe until the conclusion of the appeal).  Thus, O.C.G.A. § 51-7-81 likewise cannot provide the relief they currently seek.

Finally, Messrs. Carroll and Coots rely on "federal law" in support of their counterclaims for attorneys' fees and costs.  "Under the American Rule it is well established that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."  Summit Valley Indus. Inc. v. Local 112, United Bhd. of Carpenters & Joiners of Am., 456 U.S. 717, 721 (1982) (citation and internal quotations omitted).  Likewise, a claim asserting that the plaintiff's claims are "frivolous and filed merely to harass [d]efendant" does not create an independent cause of action for damages and must be dismissed.  Wilson v. Bush, No. Civ.A. 5:04CV141CAR, 2006 WL 692305, at *3 (M.D. Ga. Mar. 15, 2006) (also noting that neither Rule 11 nor 28 U.S.C. § 1927 provide an independent cause of action to an allegedly frivolous and harassing lawsuit). Messrs. Carroll and Coots have not provided, and the court is not otherwise aware of, any basis in "federal law" through which they would be entitled to state counterclaims solely for

attorneys' fees and costs due to NCI's allegedly frivolous claims against them.[17]

Thus, the court finds that "federal law" is similarly unable to provide either a cause

of action for, or the remedy that these two defendants seek.

In alleging their counterclaims against NCI, Messrs. Carroll and Coots have

wholly failed to identify a means by which they would be entitled to state a claim

for attorneys' fees and costs due to frivolous litigation. Therefore, their

counterclaims will be dismissed.

### D. Second Motion for a More Definite Statement

Mr. Byers's Second Motion for a More Definite Statement explains that in

March 2009, Mr. Coots and Ms. Coker filed cross-claims against Mr. Byers. He

argues that both cross-claims "merely state a vague claim for contribution and

indemnification" but do not set forth any factual basis for the claims. (Def. Byers's

---

[17]Messrs. Carroll and Coots do cite to Copeland v. Martinez, 603 F.2d 981
(D.C. Cir. 1979) in support. However, Copeland neither recognized nor created a
distinct cause of action for attorneys' fees and costs due to frivolous or harassing
litigation. Rather, the district court in Copeland independently awarded
attorneys' fees — based on "traditional equitable principles" — to the defendant
because it found that the plaintiff "had acted vexatiously, maliciously, and in bad
faith in maintaining the suit, and in so doing had intentionally abused the
judicial process." Id. at 983-84 (citations and internal quotations omitted). The
equitable principles on which it relied "permit[] an award of fees to a litigant if
the losing party has acted in bad faith." Id. at 984. A court's discretion to award
attorneys' fees based on equitable principles is distinct from a party having a
cause of action for the same.

Mem. of Law in Supp. of his Second Mot. for a More Definite Statement 2.) Mr.

Byers explains that the cross-claims likewise fail to indicate a "rationale for why

Byers would be responsible to either Defendant in the form of contribution or

indemnification." (Id.) He concludes that the Motion should be granted so that he

may properly respond to Mr. Coots's and Ms. Coker's cross-claims.

Federal Rule of Civil Procedure 12(e) provides, in part, that "[a] party may

move for a more definite statement of a pleading to which a responsive pleading is

allowed but which is so vague or ambiguous that the party cannot reasonably

prepare a response. . . ." Fed. R. Civ. P. 12(e).

> While the requirements of pleading under the Federal Rules are
> 'liberal,' and a litigant need not allege a specific fact to cover every
> element or allege with precision each element of a claim . . . a pleader
> must at least provide his opponent with 'fair notice of what [his] claim
> is and the grounds upon which it rests.'

Parker v. Brush Wellman, Inc., 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005) (Story, J.)

(quoting Conley, 355 U.S. at 47.) In other words, "a plaintiff should include in his

pleading some brief factual description of the circumstances surrounding the acts

or omissions upon which he bases his claim for relief." Id.

In Ms. Coker's Answer to NCI's Complaint, she alleges cross-claims as

follows:

> If Defendant Coker is found liable for any damages related to this
> action, Defendant Coker is entitled to contribution from Defendants

Steven R. Byers and Lonnie A. Carroll for payment of such liability.

> If Defendant Coker is found liable for any damages related to this action, Defendant Coker is entitled to total indemnification from Defendants Steven R. Byers and Lonnie A. Carroll for payment of such liability.

(Ms. Coker's Answer to Compl. ¶¶ CC2-CC3.) Similarly, in Mr. Coots's Answer to

the Complaint, he alleges:

> If Defendant Coots is found liable for any damages related to this action, Defendant Darrell L. Coots is entitled to contribution from Defendants Steven R. Byers, Randy W. Froehlich and Lonnie A. Carroll for payment of such liability.

> If Defendant Coots is found liable for any damages related to this action, Defendant Coots is entitled to total indemnification from Defendants Steven R. Byers, Randy W. Froehlich and Lonnie A. Carroll for payment of such liability.

(Mr. Coots's Answer to Compl. ¶¶ C2-C3.) Here, Ms. Coker and Mr. Coots have

failed to identify "the grounds upon which [their claims] rest[]." Parker, 377 F.

Supp. 2d at 1294. For example, the cross-claims do not specify whether Ms. Coker

and Mr. Coots seek contribution under state or federal law. See, e.g., Northwest

Airlines, Inc. v. Transport Workers Union of Am., 451 U.S. 77, 86-87 (1981) ("At

common law there was no right to contribution among joint tortfeasors. In most

American jurisdictions, however, that rule has been changed either by statute or by

judicial decision.") (footnote omitted). Neither do the cross-claims specify the

nature of any duty owed by Mr. Byers to Ms. Coker and Mr. Coots which might be

a basis for a contribution claim. Therefore, and to this extent, the court grants Mr. Byers's Motion for a More Definite Statement, and orders Ms. Coker and Mr. Coots to amend their cross-claims against Mr. Byers.

### E.    Motion to Strike

In their Motion to Strike, the Goldin Defendants argue that NCI improperly included the following statement in its Reply Brief to NCI's request to stay discovery for 90 days:

> The Goldin Defendants take every opportunity to posture and to obfuscate the seriousness of the allegations against them, possibly because the Goldin Defendants and their counsel have previously confronted similar allegations. <u>See</u> <u>U.S. v. Goldin Industries, Inc.,</u> <u>Goldin of Alabama, Inc. and Goldin Industries Louisiana, Inc.,</u> 219 F.3d 1271 (11th Cir. 2000).

(Pl.'s Reply to Goldin Defs.' Resp. to Pl.'s Mot. to Stay Disc. For 90 Days For All Parties 3.)  The Goldin Defendants assert that this statement has no relevance to NCI's request for a stay of discovery, and that instead, "it is a[n] obvious effort to persuade the Court to look past the many fatal deficiencies in NCI's claims against the Goldins and conclude that . . . the Goldins 'must have' done something wrong here simply because some of them were involved in the lawsuit underlying the Eleventh Circuit decision."  (Br. in Supp. of Goldins' Mot. to Strike 2.)  The Goldin Defendants assert that this portion of NCI's Reply Brief must be struck, and that NCI must be barred from further reference to like immaterial matters.

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[I]t is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." <u>Augustus v. Bd. of Pub. Instruction of Escambia County</u>, 306 F.2d 862, 868 (5th Cir. 1962) (citation and internal quotations omitted). Therefore, a motion to strike is appropriate "only when the pleading to be stricken has no possible relation to the controversy." <u>Id.</u> (citation and internal quotations omitted).

The court finds that NCI's Reply Brief reference to the Goldin Defendants' previous participation in the above-referenced lawsuit is of no relevance to the litigation in its current form. Thus, the Goldin Defendants' Motion to Strike is granted in part, denied in part. It is granted as the disputed portion of NCI's Reply Brief shall not be given weight or credit by the court. The Motion is denied insofar as the court declines to bar NCI from altogether referring to <u>United States v. Goldin Indus., Inc., Goldin of Ala., Inc. & Goldin Indus. La., Inc.</u>, 219 F.3d 1271 (11th Cir. 2000) in the future—provided that any citation is for matters properly relevant to the current case.

**F.**  **Motion to Stay Discovery/Motions to Stay Further Proceedings as Against Messrs. Byers and Carroll**

Finally, Mr. Byers and Mr. Carroll have filed Motions to Stay Further Proceedings as the case relates to each of them personally. Mr. Byers explains that the events giving rise to this case "are the subject of an ongoing, and apparently intensive investigation being conducted by the United States[] Attorney Generals Office in conjunction with the Secret Service." (Br. in Supp. of Def. Byers' Mot. for Stay 2.) Mr. Carroll likewise says that a grand jury in the Northern District of Georgia is currently in the process of investigating the transactions at issue in this case. (Def. Carroll's Mot. for Stay ¶ 2.) As a result, both defendants are concerned about protecting their Fifth Amendment privileges during the course of responding to discovery requests. Although they intend to assert their right against self-incrimination, they are concerned that this may cause other parties to the action to attempt to draw negative inferences from their assertions. Likewise, there is a concern that they will not be able to respond adequately to a motion on the pleadings or a motion for summary judgment. (Id. ¶ 5; Def. Byers's Mot. for Stay ¶ 5.) Consequently, Messrs. Byers and Carroll request that the court stay any further proceedings in this case that relate to them.

NCI has also filed a Motion that acknowledges the ongoing federal criminal investigation. However, NCI argues that a stay of the civil proceeding is not appropriate unless indictments have been issued, and there is more than a mere

possibility of a criminal proceeding.  NCI states that it anticipates indictments may

issue within the next thirty to sixty days.  Therefore, NCI requests that instead of

issuing a stay of the proceedings altogether, the court stay discovery for all parties

in the case for 90 days, or until August 31, 2009.  It states that this will enable the

court and the parties to "observe whether the government issues any indictments

or receives any pleas."  (Pl.'s Mem. of Law in Supp. of Mot. to Stay 4.)

"[The] privilege against self-incrimination . . . applies alike to civil and

criminal proceedings, [or] wherever the answer might tend to subject to criminal

responsibility him who gives it."  McCarthy v. Arndstein, 266 U.S. 34, 40 (1924).

Therefore, "a witness who testifies at any proceeding, instead of asserting his Fifth

Amendment rights, loses the privilege.  A civil deponent cannot choose to answer

questions with the expectation of later asserting the Fifth Amendment."  United

States v. White, 846 F.2d 678, 690 (11th Cir. 1988) (citation omitted).  However, "a

court must stay a civil proceeding pending resolution of a related criminal

prosecution only when 'special circumstances' so require in the 'interests of

justice.'"  United States v. Lot 5, 23 F.3d 359, 364 (11th Cir. 1994) (quoting United

States v. Kordel, 397 U.S. 1, 12 & n.27 (1970)).  "The blanket assertion of the privilege

against self-incrimination is an inadequate basis for the issuance of a stay."  S.E.C.

v. Wright, 261 F. App'x 259, 263 (11th Cir. 2008).  Importantly, "the possibility of a

criminal proceeding cannot justify a stay." <u>Comptroller of Currency v. Lance</u>, 632

F. Supp. 437, 442 (N.D. Ga. 1986) (Murphy, J.). "[A] stay in a civil proceeding when

no indictment has yet issued in the criminal proceeding is rare, [however] issuing

such a stay is within th[e] court's inherent powers." <u>S.E.C. v. Healthsouth Corp.</u>,

261 F. Supp. 2d 1298, 1327 (N.D. Ala. 2003).

As of the filing of NCI's Motion to Stay Discovery, indictments had not yet

been issued. Since then, none of the parties to this action have informed the court

of any subsequent indictments.[18] Although Messrs. Byers and Carroll have not

made a convincing argument as to the presence of "special circumstances" or

"interests of justice," <u>Lot 5</u>, 23 F.3d at 364, that necessitate staying the proceedings

as against them solely, the court acknowledges that a stay of the proceedings, as to

all parties, is appropriate at this time. Therefore, the current proceedings are stayed

for ninety (90) days as of the date of this Order.

## IV.    <u>Summary</u>

For the foregoing reasons, NCI's Motion for Leave to Amend Complaint and

to Add Parties [Doc. No. 77] is GRANTED; the Goldin Defendants' Motion to

---

[18]If indictments have in fact been issued, NCI is requested to notify the
court.

Dismiss [Doc. No. 48] is DENIED AS MOOT[19]; Mr. Byers's Second Motion for a More Definite Statement [Doc. No. 51] is GRANTED; NCI's Motion to Dismiss Defendant Lonnie Carroll's Counterclaim for Cost of Defense [Doc. No. 56] is GRANTED; NCI's Motion to Dismiss Defendant Darrell L. Coots's Counterclaim for Cost of Defense [Doc. No. 64] is GRANTED; Mr. Byers' Motion for Stay of Further Proceedings as to Him Until Further Order of the Court [Doc. No. 83] is GRANTED IN PART; Mr. Carroll's Motion for Stay of Further Proceedings as to Him Until Further Order of the Court [Doc. No. 90] is GRANTED IN PART; NCI's the Motion to Stay Discovery for Ninety Days for All Parties [Doc. No. 97] is GRANTED IN PART; the Goldin Defendants' Motion to Dismiss NCI Group, Inc.'s Amended Complaint [Doc. No. 99] is DENIED; the Goldin Defendants' Motion for Leave to File Briefing Exceeding Court's Page Limitation [Doc. No. 101] is GRANTED[20]; the

---

[19]The Goldin Defendants filed a Motion to Dismiss the Complaint on March 31, 2009. On May 1, 2009, without responding to the Motion to Dismiss, NCI filed a Motion for Leave to Amend Complaint and to Add Parties. The Goldin Defendants thereafter filed a Motion to Dismiss NCI's Amended Complaint/Response to NCI's Motion for Leave to Amend Complaint. This pleading contained all of the original arguments from the Goldin Defendants' first Motion to Dismiss, and then some. Because the court has (1) granted NCI's Motion for Leave to Amend Complaint, and (2) addressed the Goldin Defendants' Motion to Dismiss NCI's Amended Complaint, it denies as moot the Goldin Defendants' first Motion to Dismiss.

[20]Local Rule 7.1(D) states "[a]bsent *prior permission of the court*, briefs filed in support of a motion or in response to a motion are limited in length to twenty-five (25) pages. If the movant files a reply, the reply brief may not exceed fifteen

Goldin Defendants' Motion to Strike a Portion of NCI's Reply and Bar NCI From

Referring to Certain Immaterial Matters [Doc. No. 109] is GRANTED IN PART,

DENIED IN PART; and NCI's Motion for Leave to File Brief Exceeding Court's Page

Limitation [Doc. No. 112] is GRANTED.

The current proceedings are hereby ADMINISTRATIVELY TERMINATED.

NCI is ORDERED to provide the court with a status report at the end of 90 days

indicating whether the case is ready to proceed. NCI may seek to reopen the

proceeding at any time by filing a motion to that effect.

IT IS SO ORDERED, this 4th day of August, 2009.


s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE

---

(15) pages." L.R. 7.1(D), N.D. Ga. (emphasis added). Both the Goldin
Defendants and NCI have filed briefs in excess of this limitation without prior
permission of the court (64 and 50 pages respectively). The Reply Brief filed by
the Goldin Defendants was 47 pages long, more than three times the length
permitted by the Local Rules. It was also filed without prior permission. In light
of these violations, all future pleadings in this action which exceed the page
limits set by the Rules of the court will not be considered by the court.